

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

BDM/JPM/PP
F. #2018R00002

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

August 6, 2021

Via ECF and E-Mail
The Honorable Raymond J. Dearie
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Jack Thai,
Criminal Docket No. 19-501 (RJD)

Dear Judge Dearie:

In advance of the telephone conference scheduled for August 11, 2021 in the above-captioned criminal forfeiture proceeding, the government respectfully writes to provide a report as to the status of three real properties located in the vicinity of San Francisco, California and various other items seized by the United States. For the reasons set forth below, the sole petition filed to date asserting claims to these assets was filed prematurely. The petition should therefore be held in abeyance until the government completes steps required to commence an ancillary proceeding by providing notice to all potential third-party claimants in accordance with the provisions of Rule 32.2 of the Federal Rules of Criminal Procedure.

Accordingly, the government respectfully requests, with the Court's approval, permission to submit another report in ninety (90) days advising as to whether it has completed steps necessary to commence the ancillary proceeding and the status of all claims. During this period, the government also anticipates continuing to engage in settlement discussions in an effort to resolve claimants' alleged interests in property referenced in preliminary orders of forfeiture previously entered by the Court. The government has conferred with counsel for the petitioners that have asserted claims to date, who consents to this request.

I. Factual and Procedural Background

This case stems from a large-scale marijuana trafficking and money laundering operation managed by defendant Kevin Lau. Since at least February 2015, Kevin Lau arranged large-scale marijuana shipments to be packaged and carried by tractor-trailer from California and Washington State for delivery to various locations across the United States,

including Queens, New York. See Affidavit and Complaint in Support of Application for Arrest Warrants, Dkt. #1, at ¶ 2. Defendant Kevin Lau additionally directed the laundering of the proceeds of drug-trafficking back to the West Coast, by secreting money on airplanes and laundering it through casinos. Id. at ¶¶ 2, 14. Co-defendants Kenneth Tam and Jack Thai, among others, worked with Kevin Lau to transport and distribute marijuana and carry and hide the cash proceeds of drug trafficking. Id.

In order to transport marijuana from the West Coast, defendant Kevin Lau arranged for the marijuana to be placed within shipping crates falsely labeled as containing furniture, granite, or other items. Id. at ¶ 3. The shipping crates were wrapped in black cellophane and then transported by shipping and transportation companies in tractor-trailers. Id. Kevin Lau used fictitious companies, including "Furniture Brothers," "Coastal Designs," and "New Century Design" as the shipping and receiving customers for the delivery of marijuana. Id. The shipping crates were not delivered to legitimate businesses but instead delivered to defendant Kevin Lau's co-conspirators and stored in commercial storage facilities and residences in New York City. Id.

According to records provided by shipping and freight-forwarding companies that arranged for or transported crates sent by "Furniture Brothers," at least 150 cross-country shipments sent between February 2015 and July 2018 were signed for by "Michael Lin" or a derivation of that name (e.g., "Mike," "Lin" or "Lynn"). Id. at ¶ 4. Law enforcement agents determined the name "Michael Lin" to be a fictitious name used by defendant Kenneth Tam and other co-conspirators who actually received the crates. Id. Usually, these shipments listed a telephone number with a New York area code that ended in "1128" as the contact for "Coastal Designs" and "New Century Design." Id. On at least one occasion, in or around July 2017, defendant Kenneth Tam's name was used (instead of the "Michael Lin" name) to sign for a "Coastal Designs" delivery of two pallets weighing approximately 1,300 pounds. Id. In addition, Kenneth Tam's driver's license was provided to the transportation company that made the delivery. Id.

In total, law enforcement identified more than 200 tractor-trailer shipments with similar sender, receiver, and contact information that appear to be part of the drug-trafficking scheme orchestrated by defendants Kevin Lau, Kenneth Tam and Jack Thai. Id. The total weight of those shipments, according to shipping records, was approximately 185,000 pounds. Id. Based upon the seizure of several shipments to "New Century Design" in July 2018, task force officers estimated that the 200 shipments contained at least 100,000 pounds of marijuana, marijuana oil, and drug paraphilia. Id.

On or about July 30 and July 31, 2019, defendants Kenneth Tam and Jack Thai were arraigned before United States Magistrate Judge Steven M. Tiscione on a criminal complaint charging them, along with Kevin Lau, with conspiring to distribute and possess with intent to distribute marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 846. See Minute Entries, Dkt. #11-12. Defendant Kevin Lau fled from prosecution and remains a fugitive from justice.

On or about October 29, 2019, a grand jury in this district returned an Indictment against defendants Kevin Lau, Kenneth Tam and Jack Thai. See Indictment, Dkt. #25. In accordance with the provisions of Rule 32.2 of the Federal Rules of Criminal Procedure, the Indictment contained criminal forfeiture allegations providing notice of the government's intent to seek forfeiture, including pursuant to 21 U.S.C. § 853(a), of (i) any property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the defendants' violation of Section 846, and (ii) any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such offense. Id. at ¶¶ 3-4; Fed. R. Crim. P. 32.2(a).

The forfeiture allegations in the Indictment specifically identified, as subject to forfeiture to the United States, three parcels of the real property and premises, together with their respective buildings, appurtenances, improvements, fixtures, attachments, easements and furnishings, located at the following addresses: (a) 430 N. Canal St., Unit #7, South San Francisco, California 94080 (the "Canal Street Property"); (b) 2242 35th Avenue, San Francisco, California 94116 (the "35th Avenue Property"); and (c) 1667 34th Avenue, San Francisco, California 94112 (the "34th Avenue Property" and, together with the Canal Street Property and the 35th Avenue Property, the "Real Properties"). See Indictment, at ¶ 3.

The Real Properties were used by defendant Kevin Lau to carry out his drug-trafficking operation and/or were purchased by him during the drug-trafficking conspiracy with criminal proceeds. The Canal Street Property is a warehouse/storage unit nominally titled in the names of Hing Gin Lau and Sandy Lau, who are defendant Kevin Lau's parents. On or about July 24, 2019, during a search of the Canal Street Property conducted pursuant to a judicially authorized search warrant, law enforcement officers found and seized approximately 150 pounds of processed marijuana in heat-sealed bags, a large quantity of vape cartridges, packaging materials and labels, shipping products provided by Uline Corporation,[1] and a forklift.

The 35th Avenue Property is a single-family residence in San Francisco that was the last known residence of defendant Kevin Lau before his flight from justice. Property records reflect that, at the time of the Indictment, the property was nominally titled in the name of defendant Kevin Lau's wife, Shuping Wu, as well as Kevin Lau's parents Hing Gin Lau and Sandy Lau. Defendant Kevin Lau resided there with his wife and his parents. The 35th Avenue Property was purchased during the charged drug trafficking conspiracy, on or about June 30, 2017, for approximately $1,388,000. Approximately one week later, on or about July 7, 2017, defendant Kevin Lau executed an interspousal transfer deed which "relinquished all of his right, title, and interest . . . in and to the land escribed [t]herein and

---

[1] Uline Corporation ("Uline") is a privately held United States company that offers shipping and other shipping/business supplies. Between January 2016 and June 2018, defendant Kevin Lau had arranged for various items relevant to the packaging of marijuana to be shipped to the Canal Street Property. Thus, the Canal Street Property was one location where defendant Kevin Lau apparently packaged and prepared shipments of marijuana for transportation.

placing title in the name of [Shuping Wu] as his/her separate property." On or about July 24, 2019, pursuant to a judicially authorized search warrant, law enforcement officers searched the 35th Avenue Property. During the search, law enforcement officers found a tetrahydrocannabinol (THC)[2] laboratory on the ground floor of the home. Officers seized approximately 7,500 vials of THC vapor liquid, tens of thousands of empty cartridges, and equipment used to fill the THC vape cartridges. In addition, officers seized various other assets, including currency, jewelry and handbags (collectively, the "Seized Items"), as property traceable to proceeds of the conspiracy.

The 34th Avenue Property is a single-family residence in San Francisco. According to property records, the residence was also purchased during the conspiracy, on or about December 29, 2017, for approximately $1,400,000. On or about December 15, 2017, approximately $390,000 was transferred from an account held in the names of defendant Kevin Lau and Shuping Wu to an escrow agent as a down payment towards the purchase of the 34th Avenue Property. The 34th Avenue Property is nominally titled in the name of Jennifer Lau, who is defendant Kevin Lau's sister, and Chan Ni Liu, who is Jennifer Lau's spouse. Based on a drive-by inspection conducted in or around July 2019, the 34th Avenue Property appeared to be vacant and in need of repairs and renovation.

On March 3, 2020, the government filed a Bill of Particulars that identified the Seized Assets as among property subject to forfeiture to the United States. See Bill of Particulars, Dkt. #43. Approximately four months later, on July 8, 2020, Hing Gin Lau, Sandy Lau, Shu Ping Wu, Jennifer Lau and Chan Ni Liu (collectively, the "Petitioners") filed a motion, in a case captioned Lau, et al. v. United States, Miscellaneous Docket No. 20-1549 (RJD) (hereinafter, the "Misc. Dkt."), which seeks expungement of lis pendens recorded by the government as to each of the Real Properties. See Petitioners' Motion, Misc. Dkt. #3. That action is currently pending before the Court.

On February 10, 2021, defendants Kenneth Tam and Jack Thai pleaded guilty to Count One of the Indictment charging a conspiracy to distribute and possess with intent to distribute marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii). See Minute Entry, Dkt. #54. In connection with the guilty pleas, the Court entered preliminary orders of forfeiture (the "Preliminary Orders") as to the Real Properties and the Seized Items. See Preliminary Orders of Forfeiture, Dkt. ##55-56.

On April 2, 2021, counsel for the Petitioners filed a petition in which (i) the Petitioners asserted an interest in the Real Properties and (ii) petitioners Hing Gin Lau and Sandy Lau asserted an interest in certain of the Seized Items (the "Claimed Items"). See Verified Petition, Dkt. #58, at 2, 5-6. In addition, the Petitioners sought relief from the Preliminary Orders to recognize their respective claimed interests in the Real Properties and Claimed Items. Id. at 2-3 (quoting 21 U.S.C. § 853(n)). Petitioners Hing Gin Lau and Sandy

---

[2] THC is the principal psychoactive constituent of marijuana and a Schedule I controlled substance.

Lau also sought release of the Claimed Items pursuant to provisions of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"). Id. at 7-8 (quoting 18 U.S.C. § 983(a)(3)).

On July 27, 2021, the Court sentenced defendant Jack Thai to thirty months of imprisonment followed by three years of supervised release. See Minute Entry, Dkt. #73. The sentencing of defendant Kenneth Tam is presently scheduled for October 13, 2021. See July 21, 2021 Electronic Order.

II. Conduct of the Ancillary Proceeding

A post-conviction ancillary proceeding is where third parties have an opportunity to establish their legal right, title or interest in criminally forfeited property. See 21 U.S.C. § 853(n). The ancillary proceeding closely resembles a civil action and, as such, is generally governed by the same procedures as those set forth in the Federal Rules of Civil Procedure. See, e.g., Pacheco v. United States, 393 F.3d 348, 352 (2d Cir. 2004) (commenting that civil procedures aid efficient resolution of claims in ancillary proceeding); Fed. R. Crim. P. 32.2(c)(1) (authorizing motions to dismiss, discovery, and motions for summary judgment in ancillary proceeding).

In order to advance a claim in an ancillary proceeding, a third-party claimant must first establish a "legal interest" in a particular asset identified in an order of forfeiture, within the meaning of 21 U.S.C. § 853(n)(2). United States v. Watts, 786 F.3d 152, 160 (2d Cir. 2015) (citing United States v. Ribadeniera, 105 F.3d 833, 834-35 (2d Cir. 1997)); see also United States v. Timley, 507 F.3d 1125, 1129-30 (8th Cir. 2007) ("[A] party seeking to challenge the government's forfeiture of money or property used in violation of federal law must first demonstrate a legal interest in the seized item sufficient to satisfy the court of its standing to contest the forfeiture.") (citation omitted); United States v. Salti, 579 F.3d 656, 667 n. 11 (6th Cir. 2009) (holding that standing must be supported in same way as any other matter on which claimant bears burden of proof).

Bare legal title is insufficient to confer standing to challenge a forfeiture. See, e.g., United States v. Tardon, 493 F. Supp. 1188, 1208-09 (S.D. Fla. 2020) (recognizing that people engaged in illegal activities often attempt to disguise their interests in property by placing title in someone else's name) (citing United States v. Coffman, 612 Fed. Appx. 278, 286 (6th Cir. 2015)). Therefore, "it is well established that there can be criminal forfeiture of property that is held in a third-party's name if the Government believes that the third party is just a nominee." United States v. Brown, No. 04 CR 159, 2006 WL 898043, at *6 (E.D.N.Y. Apr. 4, 2006) (Garaufis, J.) (citing 32 Am. J. Crim. L. 55, Stefan D. Cassella, Criminal Forfeiture Procedure: An Analysis of Developments in the Law Regarding the Inclusion of a Forfeiture Judgment in the Sentence Imposed in a Criminal Case, at *84 (Fall 2004)).

Only after a claimant makes a threshold showing of standing under Section 853(n)(2) may a court reach the merits of a claim, at which point the Court must determine whether the claimant has met the burden of showing that his or her legal interest is a "superior interest" as compared to the government's interest at the time of the acts giving rise

to forfeiture. Watts, 786 F.2d at 160; Timley, 507 F.3d at 1130, n. 2 (distinguishing between "legal interest" required for claimant to establish standing under Section 853(n)(2), and "superior legal interest" required for claimant to ultimately prevail on merits under Section 853(n)(6)); Pacheco, 393 F.3d at 351 ("burden [falls] ultimately on the petitioner to prove her claim by a preponderance of the evidence"); United States v. Porchay, 533 F.3d 704, 709 (8th Cir. 2008) ("To prevail in a § 853(n) claim, [claimant] had to demonstrate by a preponderance of the evidence that she had a superior right, title, or interest in the seized property . . . ."); United States v. Nava, 404 F.3d 1119, 1125 (9th Cir. 2005) ("[T]he petitioner bears the burden of proving his right, title, or interest under Section 853(n)(6).").

In order to show a superior interest, a claimant must either demonstrate under Section 853(n)(6)(A) that he or she had priority of ownership over the forfeited property at the time of the offense, or must demonstrate under Section 853(n)(6)(B) that he or she subsequently acquired the property as a bona fide purchaser for value without cause to believe the property was subject to forfeiture. Ribadeniera, 105 F.3d at 834-35. Under the relation back doctrine, the government's exclusive interest in forfeited property "vests in the United States upon the commission of the act giving rise to forfeiture . . . ." 21 U.S.C. § 853(c); Nava, 404 F.3d at 1124 ("The title to forfeited property vests in the United States at the time the defendant commits the unlawful acts . . . ."). In the case of property involved in a criminal conspiracy, the government's interest in the property arises at the start of the conspiracy. See, e.g., United States v. Monea Family Trust I, 626 F.3d 271, 276 (6th Cir. 2010) (referencing trial court's ruling that government's interest in property involved in money laundering conspiracy vested when conspiracy first began).

Thus, the ancillary proceeding is tantamount to a quiet title action in which the Court must determine, under the standards set forth in Section 853(n)(6), whether forfeited property actually belongs to the third party that has asserted a claim to it. See, e.g., United States v. McHan, 345 F.3d 262, 275-76 (4th Cir. 2003) (holding that petitioner in ancillary proceeding has no Seventh Amendment right to jury trial). If the forfeited property belongs to the third party, then the property must be stricken from the order of forfeiture; however, if the property does not belong to the third party, then the preliminary order of forfeiture becomes final and the United States becomes the exclusive titleholder to the property. See 21 U.S.C. §§ 853(n)(6) and (7); United States v. Puig, 419 F.3d 700, 703 (8th Cir. 2005) (holding that if no third party files a meritorious claim to assets included in order of forfeiture, then United States obtains clear title to property pursuant to 21 U.S.C. § 853(n)(7)).

In accordance with the provisions of Rule 32.2, the Preliminary Orders entered by the Court in this case authorize the government to commence an ancillary proceeding by publishing notice of the orders and sending notice to any person who reasonably appears to be a potential claimant to the Real Properties and the Seized Items. See Preliminary Orders, at ¶¶ 2-3; Fed. R. Crim. P. 32.2(b)(6). Consistent with the custom and practice in this district, the Preliminary Orders also authorize publication on the government website, www.forfeiture.gov, which is to run for a period of thirty days under the applicable rules. See Preliminary Orders, at ¶ 3; Fed. R. Crim. P. 32.2(b)(6)(C) (cross-referencing internet

publication procedures found in Fed. R. Civ. P. Supp. R. G(4)(a)(iv)(C) that govern in rem forfeiture actions). Within thirty days following final publication or receipt of direct notice, the Preliminary Orders further authorize any third party asserting a legal interest in the Real Properties or the Seized Items to file a petition requesting a hearing to adjudicate the validity of her alleged interest in the property and seeking amendment of the order to recognize the claimed interest. See Preliminary Orders, at ¶ 4 (citing 21 U.S.C. § 853(n)(6)).

## III. Status of Ancillary Proceeding

Earlier today, the government took steps to commence an ancillary proceeding by beginning publication of notice of the forfeiture and sending notice to the Petitioners. The Petitioners' filing of their petition prior to commencement of the ancillary proceeding renders the petition premature.[3] See United States v. Marion, 562 F.3d 1330, 1338 (11th Cir. 2009) (recognizing that authority to commence ancillary proceeding rests with government) (citing Advisory Committee Notes to Fed. R. Crim. P. 32.2).

The government is currently in the process of identifying additional potential claimants to the Real Properties, which includes the review of property records to confirm the identities of lienholders, so that it may proceed to issue them direct notices of the forfeiture in accordance with the applicable rules. In addition, the government has engaged in settlement discussions with D.L. Rencher, separate counsel for petitioner Shuping Wu, regarding certain of the Claimed Items. As a result, the government respectfully requests a period of ninety (90) days to complete the noticing process and allow for the filing of any additional claims, which will ensure the orderly and efficient commencement of the ancillary proceeding involving numerous assets. During this time, the government also anticipates engaging in settlement discussions with counsel for the Petitioners, including continuing discussions with counsel for Shuping Wu, aimed at resolving one or more claims without the need for Court intervention.

---

[3] Although not relevant to the conduct of the ancillary proceeding, in their petition, petitioners Hing Gin Lau and Sandy Lau contend that the government is required to release the Claimed Items under the provisions of CAFRA. See Petition, at 7-8 (quoting 18 U.S.C. § 983(a)(3)). Specifically, they maintain that following receipt by U.S. Customs and Border Protection of their administrative claims, the government failed to timely commence a judicial forfeiture proceeding prior to expiration of the March 4, 2020 deadline under CAFRA. Id. at 8 ("[N]owhere in these criminal proceedings does the government identify the personal property [claimed in the administrative forfeiture proceeding].") Petitioners Hing Gin Lau and Sandy Lau are wrong. The government filed a Bill of Particulars on March 3, 2020, which identified the Seized Assets as among property subject to forfeiture based upon the Indictment returned in this case. See Bill of Particulars, Dkt. #43. This filing timely satisfied the government's obligations under CAFRA. See, e.g., United States v. Allen, No. 5:00-CR-28-OC-28KRS, 2006 WL 1889978, at *4 (M.D. Fla. July 10, 2006) (holding that by filing bill of particulars naming property as subject to forfeiture in criminal case, government complied with CAFRA deadline for commencing judicial forfeiture action within 90 days of receipt of administrative claim).

Accordingly, the government respectfully requests that the Court hold the Petitioners' petition in abeyance while the government takes steps to issue additional direct notices and complete publication in accordance with the statutory scheme. Based upon the practices in this district, the government does not anticipate the need to take custody of the Real Properties during this time absent a change of circumstances, such as those that would place the properties at risk of loss. The government further requests that it be directed to file a report in ninety (90) days, or by November 11, 2021, advising the Court as to whether it has completed all steps necessary to commence the ancillary proceeding by providing notice to all potential third-party claimants and the status of all claims, including the outcome of settlement discussions.

On August 2, 2021, the government conferred with David Michael, counsel for the Petitioners, who indicated that he consents to the requested relief. Thank you for Your Honor's consideration of this submission.

Respectfully submitted,

JACQUELINE M. KASULIS
Acting United States Attorney

By: /s/ Brian D. Morris
James P. McDonald
Philip Pilmar
Brian D. Morris
Assistant U.S. Attorneys
(718) 254-7000

cc: All Counsel of Record (by ECF)
David Michael (by e-mail)
D.L. Rencher (by e-mail)